**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| EDUCATIONAL IMPACT, INC.<br><br>Plaintiff,<br>v.<br><br>CHARLOTTE DANIELSON<br>12 Gordon Way<br><br>Princeton, NJ 08540<br><br>and<br><br>OUTCOMES ASSOCIATES, INC.<br>12 Gordon Way<br>Princeton, NJ 08540<br><br>and<br><br>THE DANIELSON GROUP LLC<br>12 Gordon Way<br>Princeton, NJ 08540<br><br>and<br><br>TEACHSCAPE, INC.<br>71 Stevenson Street<br>5th Floor<br>San Francisco, CA 94105<br><br>Defendants. | CIVIL ACTION<br>DOCKET NO.: 3:14-CV-00937-FLW-LHG<br><br>**Revised Motion Date: September 2, 2014**<br>(Original Motion Date: July 21, 2014)<br>(Oral Argument is Requested) |

**THE DANIELSON DEFENDANTS' REPLY MEMORANDUM OF LAW**
**IN FURTHER SUPPORT OF THEIR MOTION**
**TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT AS AGAINST THEM**

STORCH AMINI & MUNVES PC
2 Grand Central Tower, 25th Floor
140 East 45th Street
New York, NY 10017
(212) 490-4100
*Attorneys for Defendants*
*Charlotte Danielson, Outcomes Associates, Inc. and The Danielson Group, LLC*

# TABLE OF CONTENTS

**PAGE**

Table of Authorities ........ ii

Preliminary Statement ........ 1

Argument ........ 2

I. NO CLAIM FOR BREACH OF CONTRACT IS STATED ........ 2

A. The Contract Itself Rebuts EI's Breach of Contract Claim ........ 2

B. EI Concedes That the Contract Precludes Its Alleged Damages ........ 7

II. LANHAM ACT AND UNFAIR COMPETITION CLAIMS ........ 8

III. THE TORT CLAIMS ........ 10

A. The Gist of the Action Doctrine ........ 10

B. No Tortious Interference Claims Are Stated ........ 11

IV. INJUNCTION AND UNJUST ENRICHMENT CLAIMS ........ 14

CONCLUSION ........ 15

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Acumed LLC v. Advanced Surgical Servs., Inc.*,
561 F.3d 199 (3d Cir. 2009) ........................................................ 12, 13, 13 n.10

*Air Terminal Servs., Inc. v. Lehigh-Northampton Airport Auth.*,
NO. CIV. A. 96-2314, 1996 WL 460059 (E.D. Pa. Aug. 1, 1996) ............... 13 n.9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..........................................................................................13

*Banks v. Hanoverian, Inc.*,
No. 2807, 2005 WL 1522012 (Pa. Ct. Com. Pl., June 23, 2005) ................... 8 n.5

*BP Envtl. Servs., Inc. v. Republic Servs., Inc.*,
946 F. Supp. 2d 402 (E.D. Pa. 2013)......................................................... 13 n.10

*Dalrymple v. Brown*,
549 Pa. 217, 701 A.2d 164 (1997)...................................................................14

*eToll, Inc. v. Elias/Savion Adver., Inc.*,
2002 Pa. Super 347, 811 A.2d 10 (Pa. Super. Ct. 2002) ......................................11

*Kasper v. County of Bucks*,
514 Fed. Appx. 210 (3d Cir. 2013)...................................................................15

*Mathis v. Camden Cnty.*,
NO. CIV. A. 08-cv-6129, 2009 WL 4667094 (D.N.J. Dec. 3, 2009) ......... 14 n.11

*Nat'l Data Payment Sys., Inc. v. Meridian Bank*,
212 F.3d 849 (3d Cir. 2000) ..........................................................................13

*Synthes, Inc. v. Emerge Med., Inc.*,
NO. CIV. A. 11-1566, 2014 WL 2616824 (E.D. Pa. June 11, 2014).......... 13 n.10

*United States v. Q2Adminstrators, LLC*,
728 F.3d 228 (3d Cir. 2013) ....................................................................15

*Walnut Street Assocs. v. Brokerage Concepts, Inc.*,
610 Pa. 371, 20 A.3d 468 (2011)................................................................ 13 n.9

*Wedner v. Unemployment Compensation Bd. of Review*,
449 Pa. 460, 296 A.2d 792 (1972)................................................................ 8 n.5

*Yates v. Commercial Index Bureau, Inc.*,
861 F. Supp. 2d 546 (E.D. Pa. 2012)........................................................ 14 n.11

**Rules**

Fed. R. Civ. P. 9(b) ...................................................................................13

Defendants Charlotte Danielson ("Danielson"), Outcomes Associates, Inc. ("OA") and The Danielson Group, LLC ("DGLLC") (collectively, the "Danielson Defendants") submit this reply memorandum of law in further support of their motion to dismiss the First Amended Complaint herein (the "Complaint" or "Compl.") of Plaintiff Educational Impact, Inc. ("EI").

**Preliminary Statement**

Unable to address head-on the fatal legal defects in its Complaint, EI instead opposes the motion by asking the Court to blindly accept its twenty-page recitation of the facts "as true" notwithstanding that such recitation is inconsistent with the contract which those allegations mischaracterize, is directly belied by the exhibits which EI attaches to its Complaint, and tells a story which is patently implausible under the Supreme Court's precedent. The Danielson Defendants have not, as EI suggests, asked the Court to look beyond the Complaint's allegations and the documents attached thereto or otherwise incorporated by reference. Instead, their motion simply recognizes that a plaintiff's conclusory allegations need not be credited on a motion to dismiss and that a court should reject factual allegations that are directly contradicted by the documents incorporated in the Complaint. Simply put, EI's Complaint does not state a claim upon which relief can be granted against the Danielson Defendants as a matter of law.

Indeed, the "story" that EI's Complaint purports to tell is inherently implausible: EI asserts that in 2006, in connection with EI's commitment to produce just a single video program relating to Danielson's 1996 book (which, at the time, was already becoming "widely used" by teachers and school districts

(Compl. ¶ 23)), and without receiving any additional consideration, Danielson gave EI the exclusive right to produce additional video programs for all of her future scholarship and innovations for the next twenty years, even though EI assumed no obligation to actually produce any subsequent programs. As implausible as that is, it is not what renders EI's Complaint fatally deficient. What is dispositive is that the parties' contract, as well as the other documents attached to EI's Complaint, directly contradict the narrative the Complaint purports to recite. EI's mere repetition of that narrative cannot overcome EI's own documentary evidence which establishes that it has not stated a cognizable claim as a matter of law.

## Argument

## I. NO CLAIM FOR BREACH OF CONTRACT IS STATED

### A. The Contract Itself Rebuts EI's Breach of Contract Claim

First, even assuming that the "exclusive right" granted to EI were broad enough to preclude Danielson from creating any online programs based on her subsequent scholarship (and it is plainly not that broad, as discussed below), the EI Contract explicitly limits such exclusivity to the two-year period after the release of the 2008 program. The section of the EI Contract which EI contends grants it such exclusive rights provides that "This restriction shall survive the completion of the online program and extend for a period of two years after said completion." (Compl. Ex. A, fourth page, "Exclusivity; Non-Competition"). Inasmuch as the "completion of the online program" is alleged to have occurred in 2008 (Compl. ¶ 35), and the Teachscape program that EI accuses of breaching its "exclusivity" was not released until more than two years later, after January 2011 (Compl. ¶ 70), no

breach of contract claim can be stated.

EI's only response is to assert that a paragraph break in the section of the contract that contains the "exclusivity" provision prevents the two-year limitation appearing in the second paragraph from pertaining to the first. (Opp. Br. at 28.) Not surprisingly, EI cites no authority supporting its attempt to read each paragraph in a provision as independent of the others and it wholly ignores Pennsylvania authority noting that doing so would be inappropriate in that it "goes without saying that each provision within the contract should likewise be read as a whole." (Mov. Br. at 10.) Nor does EI dispute that, if the paragraph break could be read to create an ambiguity, such ambiguity should, as a matter of law, be construed against EI as the draftsman of the contract. *See* Mov. Br. at 11 n.6.[1]

Further, EI's contention makes no sense on two levels. First, if, as EI contends, the first paragraph precludes Danielson, for the twenty-year term of the contract, from creating any online video programs without EI, then there would be no reason at all in the second paragraph to preclude "poaching" of each other's employees for just two years. If Danielson were precluded from developing any new online programs for the entire twenty-year term of the contract, she would have had no use for EI's employees until then. The non-poaching provision would

[1] EI does not dispute that its construction would render the EI Contract to be an impermissible restraint of trade. (Mov. Br. at 15-16.) Instead, EI attempts to skirt that problem by recasting what it originally referred to as a "non-compete clause" (*e.g.*, Compl. ¶ 40) to now be an "exclusive license." Teachscape, in reply to its own motion to dismiss, has debunked the "exclusive license" argument, which refutation is hereby adopted and incorporated by reference.

be meaningless surplusage unless it were coextensive with the "exclusivity" period such that it precluded Danielson from gearing-up, by hiring EI's employees, to create other programs when the two-year exclusivity period ended.

Second, it is illogical to construe the EI Contract as precluding Danielson from creating, for a twenty-year period, any online programs relating not merely to her 1996 work, but also any of her future scholarship that will have its roots in that 1996 work, when (1) EI did not even commit to producing any video programs relating to such later work; (2) EI did not commit not to produce other programs that competed with the one program it was obligated to produce with Danielson; and when (3) Danielson was not guaranteed any payment at all, even for the one program EI committed to produce.[2] Indeed, it is not merely implausible that Danielson would have agreed to preclude herself from using her own future work on those terms, but it is not what the EI Contract actually provides.

If the parties intended to preclude Danielson from being involved in creating any online programs relating her subsequent scholarship for the twenty-year term of their contract, it would have been simple enough to say so. (Mov. Br. at 14.) Instead, they agreed merely that "OA shall not license or otherwise make available to a third party, for delivery over the Internet or through CD-ROM, any of the content used to create the online program. This prohibition shall include any OA

[2] The EI Contract gives Danielson a share of the revenues from the EI Online Program, but only after EI (but not Danielson) first recoups its costs. (Compl. Ex. A, fifth page, "Proceeds from the Sale of the Online Program.")

content that, if used to create a similar online program, would compete with the Online Training Program contemplated herein." (Compl. Ex. A, fourth page, "Exclusivity; Non-Competition"). The phrase "content used to create the online program" refers to videos and scripts employed in the EI online program and cannot reasonably be construed to mean "concepts reflected in her 1996 *Framework for Teaching*," not only because it would have been simpler to say so if that is what they intended, but because it is unbelievable that Danielson would preclude herself from building on her own scholarship while leaving EI free to use (or not use) her future scholarship itself.[3] EI's opposition is silent on this point.

EI's contract claim hinges on its allegations that "[t]he contract also contemplated that additional program content . . . would be created after the initial release of the Framework for Teaching Online Program by mutual agreement of the parties" (*id*. ¶¶ 29, 47), because only if that were true could EI defend its assertion that Danielson's contributions to EI's subsequent programs were subject to the "exclusivity" provision in the contract. But that assertion is simply untrue: there is ***nothing*** in the contract that contemplates anything more than the creation of the single program. The contract is clear and unambiguous in providing solely for the creation of a single online program and EI's contrary pleading cannot change what the contract actually provides. *See* Mov. Br. at 11-13.

[3] The contract contains no prohibition on EI itself using "the content used to create the online program," which makes sense if that content is understood to be the components of the program it created; but makes no sense if, as EI contends, that were understood to refer to Danielson's *Framework for Teaching*.

Nor does it avail EI to assert that "the extensive documentation discussed below[] proves that Danielson herself understood the contractual provisions to still be in effect after EI updated the Online Program with the 2011 Framework for Teaching" and that those same documents supposedly show that "it is clear that Danielson developed the 2011 Framework for Teaching specifically for use in EI's Online Program." (Opp. Br. at 29.) The documentation EI incorporates and relies on shows nothing of the kind: on its face, it merely shows that Danielson voluntarily continued to work with EI to create additional programs reflecting her new scholarship, and that she accepted compensation calculated the same way that it had been calculated for the program covered by the contract. That does not mean that the contract covers additional EI programs that the plain terms of the EI contract do not encompass.[4] And even if the baseless assertion that Danielson "developed the 2011 [*Evaluation Instrument*] specifically for use in EI's Online Program," were credited for purposes of this motion, it does nothing to salvage EI's Complaint. Even if true, it would not mean that the contract somehow covers

---

[4] The EI Contract unambiguously addresses the creation of a single video program, so work on subsequent programs with EI cannot constitute a "course of performance" offered to explain an ambiguous term. Similarly, the contract provides that it cannot be amended or changed without a writing signed by both parties and no such writing is alleged. (Compl. Ex. A, final page, "Entire Agreement.") Thus, EI's assertion that such additional work is evidence that the EI Contract required such additional work is circular: there is nothing in the contract that contemplates such additional work, no ambiguity that such additional work is relevant to resolve, and the fact that such additional work was done does not somehow make the contract say something that it plainly does not say.

a work that did not even exist at the time, or that EI automatically gained exclusive rights to Danielson's work.

In short, EI's opposition relies on the "assumed truth" of the allegations of the Complaint which are inconsistent with the actual contract claimed to be breached. The contract is controlling and establishes that Danielson's working with Teachscape more than two years after the completion of EI's program was not a breach when there is no allegation that Teachscape used any of the content from EI's video program. Count III should therefore be dismissed.

**B. EI Concedes That the Contract Precludes Its Alleged Damages**

EI alleges that it sustained over $20 million in damages (Compl. ¶ 94) and, on its breach of contract claim (Count III), it prays for an award of damages "against Defendants Charlotte Danielson and Outcomes Associates, Inc., jointly and severally, in excess of Seventy Five Thousand Dollars" (Compl. p. 28 ¶ E). However, the EI Contract expressly precludes any award of the damages EI seeks. *See* Mov. Br. at 20-21. EI offers two justifications for seeking such damages, neither of which is coherent.

First, it asserts that there is "an ambiguity" in the contract because Danielson signed it on behalf of Outcomes Associates and EI, the drafter of the contract, did not include the "Inc." in Outcomes Associate's name. (Opp. Br. at 32-33.) EI's own omission of "Inc." in the signature block does not change the fact that only a party to the contract can be liable for its breach and, by the contract's express

terms, such party will have no liability for lost profits or punitive damages.[5]

Second, EI argues that "[not] every wrong alleged by EI arises out of contractual provisons" and that "EI has alleged several wrongs by Defendants that would form independent causes of action, including misrepresenting to the public and to potential customers Teachscape's status as an exclusive licensee and directing independent contractors of The Danielson Group LLC to stop doing business with EI." (Opp. Br. at 33.) But even if those other claims actually were independent of the contract (and, as discussed below, they are not) it would not justify EI's attempt to seek impermissible damages on its breach of contract claim.

## II. LANHAM ACT AND UNFAIR COMPETITION CLAIMS

EI's only response to that branch of the motion directed to the Lanham Act (Count II) and Unfair Competition (Count I) claims is to attack a strawman, asserting that "Defendants argue that Defendants' claim that Teachscape is the exclusive licensee of the 2011/2013 [*Evaluation Instrument*] is not misleading or deceptive because EI has no rights to the 2011/2013 [*Evaluation Instrument*]."

[5] With or without the "Inc.", Danielson clearly signed the contract in her representative capacity (Compl. Ex. A, last page). Thus, she can have no individual liability on the contract claim. *See, e.g.*, *Banks v. Hanoverian, Inc.*, No. 2807, 2005 WL 1522012, at *1 (Pa. Ct. Com. Pl., June 23, 2005), *citing Wedner v. Unemployment Compensation Bd. of Review*, 449 Pa. 460, 464, 296 A.2d 792, 794 (1972). Nor does the use of personal pronouns in the contract suggest that Danielson was intended to be individually bound (Opp. Br. at 33)—especially as the personal pronoun EI used was "his" (Compl. Ex. A, fourth page, "Exclusivity; Non-Competition") which would not signify Danielson anyway. Nor does that asserted "ambiguity" explain EI's seeking damages against both OA and Danielson "jointly and severally."

(Opp. Br. at 34.) That is not what Defendants argued. Defendants have neither claimed that Teachscape is the exclusive licensee, nor that EI has no rights.

The Complaint alleges that Danielson permitted EI to use aspects of the 2011/2013 *Evaluation Instrument* in its updated online video programs and, for purposes of this motion, that allegation is accepted as true and the Danielson Defendants do not dispute that EI has the right to use whatever Danielson permitted it to use. Similarly, the Complaint does not identify any assertion by the Danielson Defendants as to Teachscape being "the exclusive licensee" of the *Evaluation Instrument*, but only assertions that Teachscape has the exclusive right to incorporate the *Evaluation Instrument* "in software products." (Compl. ¶¶ 83,84 & Exs. S and T.) Accordingly, there is nothing inconsistent and, therefore, nothing false or misleading, about the Danielson Group's assertions as to Teachscape's rights to incorporate the *Evaluation Instrument* in its interactive software products while EI might have the coordinate right to reflect aspects of the *Evaluation Instrument* in its online video programs. The Danielson Defendants pointed this out clearly (Mov. Br. at 22-24) but EI ignores it completely.[6]

Further, the Lanham Act and unfair competition claims fail for the independent reason that the allegedly false statements were not made in advertising

[6] Instead, EI merely repeats its allegations that Danielson later permitted EI to incorporate aspects of the Evaluation Instrument into subsequent video programs not contemplated by the EI Contract and somehow leaps to the conclusion that such permission constitutes "an exclusive license" to the Evaluation Instrument. (Opp. Br. at 34-35.) *See* p. 6 n.4, *supra*.

or promotion. (*See id.* at 24.) In response, EI merely asserts that "Defendants are working in concert with Teachscape," presumably on the basis that Danielson granted Teachscape a license and must derive some financial benefit from Teachscape's products. What EI does not do, however, is explain, or cite any authority for, its contention that this is enough to make the Danielson Defendants' statements actionable.

## III. THE TORT CLAIMS

### A. The Gist of the Action Doctrine

The Danielson Defendants believe that EI's tort claims are barred by two related, but nonetheless different, doctrines, the "Gist of the Action Doctrine" and the "Economic Loss Doctrine." Because the former is the obvious fit for the claims asserted here, the Danielson Defendants extensively briefed the Gist of the Action Doctrine, and referred to the Economic Loss Doctrine only briefly in a footnote. (Mov. Br. at 16-20 & 17 n. 13.)

In opposition, EI completely ignores the authority cited in the Moving Brief where the Gist of the Action Doctrine bars the very same tort claims EI alleges here. Instead, EI addresses solely the Economic Loss Doctrine. Thus, the discussion of the Gist of the Action Doctrine stands unopposed and the cited authorities, which militate in favor of dismissal of the tort claims in the Complaint, remain unrebutted. As the tort claims in the Complaint all hinge on EI's breach of contract claim, they are "inextricably intertwined with the contract claims," and,

therefore, not independently cognizable. *eToll, Inc. v. Elias/Savion Adver., Inc.*, 2002 Pa. Super 347, 811 A.2d 10, 21 (Pa. Super. Ct. 2002).[7]

**B. No Tortious Interference Claims Are Stated**

EI's claim for tortious interference with prospective economic advantage (Count V) alleges that Defendants prohibited independent contractors from doing business with EI. Stefani Hite is the sole such independent contractor identified in the Complaint and emails attached to it from Dr. Hite provide the only factual support for the allegations that independent contractors were precluded from working with EI. (Compl. ¶ 87 and referenced exhibits.) However, those very emails reveal that Dr. Hite told EI that, once she ceased being an employee of DGLLC and would be merely an independent contractor working for DGLLC, she would be completely free to work with EI. (Compl. Ex. X.) Thus, the only facts EI presents directly negate its conclusory assertion that independent contractors were precluded from working with EI. EI concedes this point by not addressing this discussion (at p. 25) in the moving brief.[8]

[7] While EI maintains that it has alleged independently actionable tort claims, the examples it provides consist of claims that rely entirely on the validity of EI's contract claim. For example, statements that Teachscape possessed an exclusive license are only alleged to be misrepresentations because EI contends that it possessed an exclusive license itself, a fact which is directly dependent on the rights conferred (or not conferred) under EI's contract with Danielson.

[8] EI instead asserts that it has "attached correspondence from prospective customers in which the customers state that they cannot do business with EI based on their mistaken belief that Teachscape is the exclusive licensee of the Framework for Teaching." (Opp. Br. at 39, citing Compl. ¶ 85 and Ex. T.) That is

footnote continued . . .

The tortious interference with contract claim (Count IV) alleges that DGLLC [and Teachscape] "caused or induced Danielson and Outcomes Associates to violate their contractual duties" to EI by granting Teachscape rights in the *Evaluation Instrument* which, EI alleges, were inconsistent with its own asserted contractual rights. Nothing in the Complaint identifies what DGLLC (of which Danielson is alleged to be the sole member, Compl. ¶ 4) supposedly did to "induce" Danielson or OA to breach the EI contract, let alone anything that was independently tortious.

Under Pennsylvania law, to be actionable, whatever it is that DGLLC supposedly did must have been done without justification, which courts have interpreted as requiring either the absence of a legitimate business interest, or the employment of independently wrongful conduct. *See, e.g., Acumed LLC v.*

---

irrelevant because EI's tortious interference with prospective economic advantage claim is expressly predicated solely upon relationships with *independent consultants* and not with potential *customers* (Compl. ¶¶ 123-131). As explained in the Mov. Brief. at 27-28, the Complaint does not sufficiently identify independent contractors or provide a basis for concluding that EI had anything more than a mere hope that they would have done future business with EI.

Moreover, EI mischaracterizes both its Complaint (paragraph 85 alleges a "drop in interest" even among its existing customers, not any loss of identifiable prospective sales) and the emails annexed as Exhibit T. One email (from Washington State) only expresses a concern about the ability of the school district to implement its own evaluation system without any mention of any desire to use EI's program (which, unlike Teachscape's software product, was not an evaluation system anyway). The other email (from the Valley View School district), merely posed a question in response to a solicitation from EI without any indication that the district was even considering EI's program.

*Advanced Surgical Servs., Inc.*, 561 F.3d 199, 215-16 (3d Cir. 2009) ("for conduct to be wrongful it must be actionable for a reason independent from the claim of tortious interference itself"), *citing Nat'l Data Payment Sys., Inc. v. Meridian Bank*, 212 F.3d 849, 858 (3d Cir. 2000). EI does not deny that it has failed to allege any such independently wrongful conduct, and merely counters *Acumed*, the controlling Third Circuit precedent from 2009, with one District Court case from 1996.[9] *Acumed* is controlling in its requirement that independently tortious conduct must be alleged to state a claim and EI's failure to do so renders its Complaint fatally deficient.[10]

The claims also fail for the additional reasons that EI fails to plead intent to harm, and because they are time-barred. (Mov. Br. at 26 n.18 & 27.) While Fed. R. Civ. P. 9(b) allows state of mind to be pleaded "generally," EI must still plead facts from which the requisite intent can be inferred. *E.g.*, *Ashcroft v. Iqbal*, 556

[9] That case, *Air Terminal Servs., Inc. v. Lehigh-Northampton Airport Auth.*, NO. CIV. A. 96-2314, 1996 WL 460059 (E.D. Pa. Aug. 1, 1996) (Opp. Br. at 37), refused to find that the conduct had to be independently tortious because section 766A of Restatement (Second) of Torts "has not been adopted by the Pennsylvania Supreme Court," *id*. at *4, a rationale that the Supreme Court subsequently rejected. *See Walnut Street Assocs. v. Brokerage Concepts, Inc.*, 610 Pa. 371, 392, 20 A.3d 468, 480 (2011) (holding it to be error to refuse to apply a section of the Restatement (Second) of Torts just because the Supreme Court had not done so).

[10] *See, e.g., Synthes, Inc. v. Emerge Med., Inc.*, NO. CIV. A. 11-1566, 2014 WL 2616824, at *20-21 (E.D. Pa. June 11, 2014) (citing *Acumed* for the principle that conduct is only wrongful in the context of tortious interference if it is actionable for an independent reason); *BP Envtl. Servs., Inc. v. Republic Servs., Inc.*, 946 F. Supp. 2d 402, 409 (E.D. Pa. 2013) (citing *Acumed* for same).

U.S. 662, 686 (2009). It has not done so. Likewise, EI's assertion that the statute of limitations should be tolled until Danielson allegedly "admitted" that Teachscape was competing (Opp. Br. at 38) fares no better because the relevant inquiry under the "discovery rule" is not when EI actually discovered that it had a claim, but whether EI alleged an "inability to know of the injury despite the exercise of reasonable diligence," *Dalrymple v. Brown*, 549 Pa. 217, 224, 701 A.2d 164, 167 (1997). Such an allegation is both wholly absent from, and inconsistent with, its pleading that it was aware of its supposed injury (from Teachscape's publicly available program) by the summer of 2011 (Compl. ¶ 72).[11]

## IV. INJUNCTION AND UNJUST ENRICHMENT CLAIMS

EI justifies its standalone claim for injunctive relief by conceding that such a claim is impermissible, but, inexplicably and without a shred of any authority, insisting that it is required to plead such a claim, even though EI incorporated a request for injunctive relief into each and every cause of action in the Complaint. EI provides no legal or logical basis for a separate claim for injunctive relief, and it should be dismissed for the reasons previously stated. (Mov. Br. at 28-29).

---

[11] A plaintiff seeking to toll a statute of limitations bears the burden of demonstrating the discovery rule's applicability. *See Mathis v. Camden Cnty.*, NO. CIV. A. 08-cv-6129, 2009 WL 4667094, at *4-5 (D.N.J. Dec. 3, 2009) ("Under Pennsylvania law, the discovery rule tolls the accrual of the statute of limitations when a plaintiff is unable, '*despite the exercise of due diligence*, to know of the injury or its cause,'") (emphasis in original; citations omitted); *see also Yates v. Commercial Index Bureau, Inc.*, 861 F. Supp. 2d 546, 551 (E.D. Pa. 2012).

EI defends its Unjust Enrichment Claim on the basis that it is a permissible alternative theory in the event that "the contract is unenforceable as to one or more Defendants" (Opp. Br.at 40), but that is not what it pleads in its Complaint. The Complaint (¶ 137) expressly pleads the claim to recover contract damages (which, as noted above, are expressly precluded by the contract) from a non-party to the contract. No such claim lies for the reasons stated in the moving brief (at 29-30), none of which are addressed, let alone rebutted, by EI.

**CONCLUSION**

For all of the foregoing reasons, the Amended Complaint of Plaintiff Educational Impact, Inc. should be dismissed in its entirety as against the Danielson Defendants, and they should be awarded such other and further relief as this Court deems just and proper. Such dismissal should be with prejudice because EI has already amended its Complaint once in response to prior motions to dismiss and has not even requested leave to amend again. *E.g.*, *United States v. Q2Adminstrators, LLC*, 728 F.3d 228, 243 (3d Cir. 2013); *Kasper v. County of Bucks*, 514 Fed. Appx. 210, 216 (3d Cir. 2013).

Dated: New York, New York
August 15, 2014

**STORCH AMINI & MUNVES PC**
*Attorneys for Defendants Charlotte Danielson, Outcome Associates, Inc. and The Danielson Group, LLC*

By: *s/ Lita Beth Wright*
Lita Beth Wright
Of Counsel:
Steven G. Storch (admitted *pro hac vice*)
Edward P. Dolido (admitted *pro hac vice*)