JOSEPH B. FIORENZO - 021421980
SOKOL, BEHOT & FIORENZO
433 Hackensack Avenue
Hackensack, NJ 07601
Phone: (201) 488-1300
Fax: (201) 488-2460
Email: jbfiorenzo@sbflawfirm.com

RONALD S. WYNN
HANSON BRIDGETT LLP
425 Market Street, 26th Floor
San Francisco, California 94105
Phone: (415) 995-5124
Fax: (415) 541-9366
Email: rwynn@hansonbridgett.com
(*Admitted Pro Hac Vice*)

Attorneys for Defendant
TEACHSCAPE, INC.

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| EDUCATIONAL IMPACT, INC.,<br>Plaintiff,<br><br>CHARLOTTE DANIELSON, OUTCOMES ASSOCIATES, INC., THE DANIELSON GROUP LLC, AND TEACHSCAPE, INC.<br>Defendants. | Civil Action No. 3:14-CV-00937-FLW-LHG<br><br>Motion Date: October 20, 2014<br><br>(Oral Argument Requested) |

# BRIEF SUPPORTING TEACHSCAPE'S MOTION TO ENJOIN PROSECUTION OF CUSTOMER HARASSMENT SUITS

# TABLE OF CONTENTS

**Page**

I. THE COURT SHOULD ENJOIN PROSECUTION OF EI's CUSTOMER HARASSMENT SUITS ........ 1

II. THE COURT HAS POWER TO ENJOIN PROSECUTION OF EI'S CUSTOMER HARASSMENT SUITS ........ 4

III. CONCLUSION ........ 9

# TABLE OF AUTHORITIES

**Page**

## CASES

*Adam v. Jacobs*, 950 F.2d 89 (2d Cir. 1991) .......... 4, 6

*Catanese v. Unilever*, 774 F. Supp. 2d 684 (D.N.J. 2011) .......... 5, 6, 9

*Chrin v. Ibrix, Inc.*, 2007 U.S.Dist. LEXIS 38587 (D.N.J. May 29, 2007) .......... 8

*City of New York v. Exxon Corp.*, 932 F.2d 1020 (2d Cir. 1991) .......... 5

*Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925 (3d Cir. 1941) .......... 5

*E.E.O.C. v. Univ. of Pa.*, 850 F.2d 969 (3d Cir. 1988) .......... 4, 5, 8

*Englebert v. McGraw-Hill Global Educational Holdings LLC*, 2014 U.S.Dist. LEXIS 92232 (E.D.Pa. July 8, 2014) .......... 8

*Jack Schwartz Shoes, Inc. v. Burger King Corp.*, 1992 U.S. Dist. LEXIS 13017 (S.D.N.Y. 1992) .......... 6

*Kerotest Manufacturing Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180 (1952) .......... 4

*Maximum Human Performance, Inc. v. Dymatize Enters., Inc.*, 2009 U.S. Dist. LEXIS 76994 (D.N.J. Aug. 27, 2009) .......... 5, 6

*Meeropol v. Nizer*, 505 F.2d 232 (2d Cir. 1974) .......... 5, 7

*Miller v. CareMinders Home Care, Inc.*, 2014 U.S.Dist. LEXIS 59941D.N.J. April 30, 2014) .......... 4, 7

*National Equip. Rental, Ltd. v. Fowler*, 287 F.2d 43 (2d Cir. 1961) .......... 4, 6

*Toy Biz v. Centuri Corp.*, 990 F. Supp. 328 (S.D.N.Y. 1998) .......... 7

## RULES AND REGULATIONS

FRCP Rule 19(a)-(b) .......... 7

Local Rule 8.1 .......... 9

**CODES**

17 U.S.C. §501(b) .......... 7

## I. THE COURT SHOULD ENJOIN PROSECUTION OF EI's CUSTOMER HARASSMENT SUITS

Teachscape and the Danielson Defendants move the Court to enjoin plaintiff Educational Impact ("EI") from prosecuting three federal court lawsuits just commenced against three Teachscape customers in three different federal courts. These customer suits are intended specifically and only as leverage against Teachscape and Charlotte Danielson, and assert a liability directly at issue and refuted in the Teachscape-Danielson Motions To Dismiss currently before the Court. The newly sued defendants are the New York City Department of Education, Rochester City School District, and the Pittsburgh Public School District. The cases are filed in the United States District Courts for the Eastern District of New York, the Western District of New York, and the Western District of Pennsylvania:

- Educational Impact, Inc. v. New York City Department of Education, Case No. 1:14-cv-05177-DLI-MDG, USDC E.D.N.Y.
- Educational Impact, Inc. v Rochester City School District, Case No. 6:14-cv-06503, USDC W.D.N.Y.
- Educational Impact, Inc. v. Pittsburgh Public School District, Case No. 2:14-cv-01272-RCM, USDC W.D.Pa.

[Wynn Cert.¶2-3, Exs. 1-3] All three new complaints are identical, except for the school district sued. All three cases arise directly from the EI Contract and alleged "exclusive rights" squarely at issue in this case since February 2014—the same EI

Contract and alleged "exclusive license" that are currently before the Court on defendants' fully-briefed Motions To Dismiss.

EI has refused the Teachscape customers' requests to stay the new cases pending the resolution of this case. [Wynn Cert.¶¶6-7]

The three lawsuits are a manifest abuse of process, intended specifically to damage Teachscape's customer relationships and business, and to further publicly tarnish Charlotte Danielson's professional reputation. And these EI harassment suits have already begun to inflict the market damage that EI intends—a Rochester Business Journal article published September 26 that describes EI's knowingly false allegations as fact. [Wynn Cert. ¶7, Ex. 4]

Teachscape learned about the cases from the school districts sued, not by notice from EI or its counsel. [Wynn Cert.¶5] The three Complaints allege the existence of this case, and attach the First Amended Complaint. The sole charge in all three cases is 100% derivative and duplicative of what EI alleges in this case: that the EI Contract made EI the "exclusive licensee of the right to create a derivative work of the Framework for Teaching in the form of an online or CD-ROM- based teacher training program" [¶16], that "Teachscape's online teacher training program infringes on Educational Impact's exclusive rights" [¶17], and that the school districts' "purchase and continued use of [Teachscape's] infringing online teacher training program has caused damages to Educational Impact." [¶21]. [Wynn Cert. Exs. 1-3] That is exactly what EI alleges in this case: that Teachscape sells

products that allegedly violate rights granted to EI by the EI Contract. [FAC¶¶116-120; Response 32-33, DKT33 PageID777-78 ("The contract gives EI an exclusive license for the purpose of creating an online program based on the Framework For Teaching."] And that is exactly what is at issue and fully-briefed on Teachscape-Danielson's pending Motions To Dismiss in this case. [Motion To Dismiss DKT29-2 PageID 469-71, 475-80; Reply Brief 5-10, DKT35 PageID843-49]

The cash-strapped school districts know nothing about the EI-Teachscape-Danielson dispute. They know nothing about the EI Contract or Ms. Danielson's long-ended collaboration with EI. They know nothing about EI's baselessly claimed "exclusive license" to the FFT. They know nothing about EI's frivolous new claim under Ms. Danielson's copyrights. And they have neither knowledge of nor access to the witnesses, documents, and other evidence material to the case. As it did Teachscape, EI sued the school districts without notice or other prior objection.

The school districts are innocent bystanders to this dispute, now forced to reallocate limited resources from education to litigation defense. EI dragged them into this controversy—and is attempting to force Teachscape and Ms. Danielson to litigate these issues in multiple courts—with crystal clear objectives: to maximize the damage of its case to Teachscape-Danielson, to maximize our burden and expense, to force California-based Teachscape to intervene in multiple faraway venues, to ruin Teachscape's business (because EI expects that school districts will not buy Teachscape if the price includes defending a lawsuit in federal court), and to

use the market poison of these lawsuits to extort a settlement pay-out on its frivolous claims. EI has no legitimate justification for the filing or prosecution of any of the newly-filed cases. And for multiple copyright-specific procedural and substantive reasons—including the EI Contract clauses at issue on the pending Motions To Dismiss—the claims against the school districts are frivolous.

## II. THE COURT HAS POWER TO ENJOIN PROSECUTION OF EI'S CUSTOMER HARASSMENT SUITS

District courts have long-established power to enjoin, dismiss, or stay later-filed, duplicative litigation commenced in other federal courts, "broad enough" "discretion" to protect against litigation "harassment of [a supplier-litigant's] customers," and "discipline" sufficient to curtail "successive suits against customers in forums inconvenient for the manufacturers." *Kerotest Manufacturing Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180, 184-86 (1952). This "first-filed" rule exists to avoid duplication of judicial effort, prevent vexatious litigation, curtail forum abuse, and eliminate the risk of inconsistent judgments. *E.E.O.C. v. Univ. of Pa.*, 850 F.2d 969, 971, 977 (3d Cir. 1988); *Adam v. Jacobs*, 950 F.2d 89, 92-94 (2d Cir. 1991); *National Equip. Rental, Ltd. v. Fowler*, 287 F.2d 43, 45-46 (2d Cir. 1961). "The purpose of the first-filed rule is to encourage sound judicial administration and to promote comity among the courts in the federal system." *Miller v. CareMinders Home Care, Inc.*, 2014 U.S.Dist. LEXIS 59941 *8 (D.N.J. April 30, 2014)(quoting *E.E.O.C. v. Univ. of Pa.*, 850 F.2d 969, 971 (3d Cir. 1988). "Its primary purpose is to 'avoid burdening the federal judiciary and to prevent the

judicial embarrassment of conflicting judgments.'" *Catanese v. Unilever,* 774 F. Supp. 2d 684, 687-88 (D.N.J. 2011).

In the Third Circuit, the first-filed rule gives the district court in a first-filed case "the power to enjoin" parties from litigating "similar cases" later-filed in "different federal courts." *E.E.O.C. v. Univ. of Pa.*, 850 F.2d 969, 971 (3d Cir. 1988); *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 928 (3d Cir. 1941). As summarized in *Maximum Human Performance, Inc. v. Dymatize Enters., Inc.*, 2009 U.S. Dist. LEXIS 76994 *6 (D.N.J. Aug. 27, 2009)(quoting *E.E.O.C. v. Univ. of Pa.*, 850 F.2d 969, 971 (3d Cir. 1988).

> The first-to-file rule provides that "in all cases of federal concurrent jurisdiction, the court which first has possession of the subject matter must decide it. ... The doctrine is a "policy of comity" that "counsel[s] trial judges to exercise their discretion by enjoining subsequent prosecution of "similar cases ... in different federal courts."

*Id.* This power to enjoin is well-established:

> The first-filed rule states that where an action is brought in one federal district court, the first court has jurisdiction to enjoin the prosecution of the second action, unless there are special circumstances which justify giving priority to the second action.

*City of New York v. Exxon Corp.*, 932 F.2d 1020, 1025 (2d Cir. 1991); *Meeropol v. Nizer*, 505 F.2d 232, 235 (2d Cir. 1974)("Where an action is brought in one federal

district court and a later action embracing the same issue is brought in another federal court, the first court has jurisdiction to enjoin the prosecution of the second action."); *Jack Schwartz Shoes, Inc. v. Burger King Corp.*, 1992 U.S. Dist. LEXIS 13017 *5 (S.D.N.Y. 1992)("When two lawsuits are pending in two different federal district courts, the party that filed the first action may move in the court in which it filed the first action for an order enjoining the prosecution of the second action."); *Adam v. Jacobs*, 950 F.2d 89, 92-94 (2d Cir. 1991); *National Equip. Rental, Ltd. v. Fowler*, 287 F.2d 43, 45-46 (2d Cir. 1961).

That EI has sued different defendants in the three cases—and asserts copyright infringement as a new legal theory based on the same facts alleged here—makes no difference. As held in *Maximum Human Performance, Inc. v. Dymatize Enters., Inc.*, 2009 U.S. Dist. LEXIS 76994 *7 (D.N.J. Aug. 27, 2009):

> For the first-to-file rule to apply, there must be a "substantial overlap" between the two actions, but the issues and parties involved need not be identical.

*Id. Accord: Catanese v. Unilever,* 774 F. Supp. 2d 684, 687-88 (D.N.J. 2011):

> [T]he most important consideration in a first-filed rule analysis is overlapping subject matter. … [W]hether the case share subject matter is more important than the absolute identity of the parties.

As held more recently:

> The applicability of the first-filed rule is not limited to mirror image cases where the parties and the issues perfectly align. Rather, the principles underlying the rule support its application where the subject matter of the later filed cases substantially overlaps with that of the earlier one. … The touchstone of the first-filed rule analysis is whether there is "overlapping subject matter" between the two claims.

*Miller v. CareMinders Home Care, Inc.*, 2014 U.S. Dist. LEXIS 59941 *9-10 (D.N.J. Apr. 30, 2014). Accord: *Meeropol v. Nizer*, 505 F.2d 232, 235-37 (2d Cir. 1974); *Toy Biz v. Centuri Corp.,* 990 F. Supp. 328, 332 (S.D.N.Y. 1998). Indeed, if EI succeeds in its strategy—of increasing Teachscape-Danielson litigation costs by forcing them to intervene in the customer suits as is their right (17 U.S.C. §501(b)), and as their customers would demand under FRCP Rule 19(a)-(b)—the parties will be identical in all four cases. And there is no doubt of "overlapping subject matter:" a ruling in this case that the EI Contract did not grant to EI the "exclusive license" it now claims—both in this case and in the customers suits—will bar the claims in all three customer suits based on res judicata, collateral estoppel, and "the prohibition against claim splitting":

> The rule against claim splitting is based on the belief that it is fairer to require a plaintiff to present in one action all of his theories of recovery relating to a transaction than permit him to prosecute overlapping or repetitive actions in different cases or at different times.

*Chrin v. Ibrix, Inc.*, 2007 U.S.Dist. LEXIS 38587, *10-12 (D.N.J. May 29, 2007).

Relying on the Third Circuit's *EEOC* opinion, the court in *Englebert v. McGraw-Hill Global Educational Holdings LLC*, 2014 U.S.Dist. LEXIS 92232, 2014 WL 3109884 (E.D.Pa. July 8, 2014) applied the first-filed rule to a copyright infringement case on similar facts. There—as here—the copyright plaintiffs' ownership of the copyrights alleged in the second-filed case was squarely at issue in the first-filed case, and briefed in motions then pending before the first-filed court. The Court invoked the first-filed rule—despite differences in parties and legal issues—as follows:

> The defendants argue that the first-filed rule should not apply because *Viesti v. McGraw- Hill* and this case do not involve the same parties and are not "materially on all fours" with one another. I disagree. "The first-filed rule turns on which court first obtains possession of the subject of the dispute, not the parties of the dispute." … At the heart of this dispute and that of *Viesti* is whether McGraw-Hill misused the photographs originally copyrighted to the plaintiffs. Every photograph allegedly misused in this case is also put forth as having been misused in *Viesti*. **Establishing what property rights the plaintiffs now have in these photographs is crucial to resolving this suit.** The current copyrights of the plaintiffs are not clear from the complaint. The plaintiffs' motion to intervene and defendants' motion for summary judgment in *Viesti* already address the parties' respective positions on status of the plaintiffs' copyright privileges. Both of those motions have already been substantially briefed. At this point, the District of Colorado is better positioned to determine the plaintiffs' copyright interests than this court.

*Englebert v. McGraw-Hill Global Educational Holdings LLC*, 2014 U.S.Dist. LEXIS 92232 *8-9 (E.D.Pa. July 8, 2014).

This Court is "best positioned" to determine what rights EI has under the EI Contract, and whether Teachscape's alleged "online teacher training programs" violate any such rights. And EI's illegitimate strategy for it customer suits—exactly the same strategy underlying its multiple violations of the Court's Local Rule 8.1—should be as transparent to the Court as it is to Teachscape and Ms. Danielson. Allowing EI's customer cases to proceed will reward EI's bad faith litigation strategy, allow a multiplicity of near-identical, vexatious suits, risk multiple inconsistent judgments, and allow EI to increase substantially the cost and burden to Teachscape and Danielson of what EI's CEO and counsel know is frivolous assertion of school district liability.

"Rare or extraordinary circumstances, inequitable conduct, bad faith, and forum shopping are proper bases upon which a court may decline to apply the first-filed rule." *Catanese v. Unilever*, 774 F.Supp. 2d 684, 687 (D.N.J. 2011). Here, the party who filed both the first-filed and the multiplicity of later-filed harassment suits—EI—is the party guilty of "inequitable conduct, bad faith, and forum shopping."

## III. CONCLUSION

The timing of EI's customer suits—in the face of Motions To Dismiss that challenge the basis for the late-filed customer suits head-on—the lack of notice to the school districts sued or to Teachscape-Danielson, the attack on multiple school districts customers selected, the filings in multiple distant jurisdictions, EI's refusal

to stay the cases voluntarily, and the multitude of copyright-specific procedural and substantive defects that permeate EI's newly filed Complaints all confirm an unreasonable, vexatious, and bad faith strategic multiplicity of proceedings that justify the Court enjoining EI's prosecution of—or dismissing outright—the three EI harassment suits pending resolution of this case.

For all the foregoing reasons, the Court should enjoin EI's prosecution of or dismiss the cases filed against Teachscape customers pending resolution of this case, and award Teachscape its costs, expenses, and attorneys' fees incurred to make this motion.

DATED: September 30, 2014

SOKOL, BEHOT & FIORENZO
*Attorneys for Defendant*
*TEACHSCAPE, INC.*

By: */s/Joseph B. Fiorenzo*
Joseph B. Fiorenzo